UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,                           :
                                                    :
            v.                                      :     **MEMORANDUM & ORDER**
                                                    :     21-CR-270 (WFK)
SAMUEL MOORE,                                       :
                                                    :
                        Defendant.                  :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On March 23, 2023, Samuel Moore ("Defendant") pled guilty to the sole count of an Indictment charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 57 months of imprisonment, to be followed by 2 years of supervised release, forfeiture in accordance with the terms set forth in the Order of Forfeiture, and a $100.00 mandatory special assessment.

**DISCUSSION**

**I.      Background**

On May 10, 2021, New York City Police Department ("NYPD") officers in the Brownsville neighborhood of Brooklyn, New York received a radio call via 911 reporting a man with a firearm menacing another man in front of 315 Livonia Avenue in Brooklyn. Presentence Investigation Report ("PSR"), ECF No. 39, ¶ 4. The responding officers heard shouting as they approached the residence and began knocking repeatedly on the door. *Id.* ¶ 5. Defendant opened the door and "squeezed" past the officers as he tried to exit. *Id.* The officers observed Defendant matched the description provided by the 911 caller. *Id.* The officers patted down Defendant, recovering a loaded Ruger LCP .380 caliber firearm in Defendant's right jacket pocket, and then arrested Defendant. *Id.* ¶ 6. After Defendant's arrest, officers interviewed the 911 caller, who told

1

the officers that during the initial incident, Defendant pulled out the gun and said, "I will shoot you." *Id.* ¶ 7.

On May 11, 2021, the Government filed a Complaint against Defendant, charging him with being a felon in possession of a firearm.  ECF No. 1.  On May 18, 2021, a grand jury returned an indictment charging Defendant with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  ECF No. 6.  Defendant filed a motion to suppress the firearm on October 27, 2021, ECF No. 10, which the Court denied on November 28, 2022, ECF No. 33.  On March 23, 2023, Defendant pled guilty to the sole count of the Indictment pursuant to a plea agreement.  ECF No. 37.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## II.     Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case.  A sentencing court must also consider the Sentencing Guidelines in addition to the seven factors listed in 18 U.S.C. § 3553(a) when making a sentencing decision. The Court has done so in this case.

The Sentencing Guidelines are merely advisory in light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 264 (2005).  Nevertheless, the Guidelines range is the "starting point and the initial benchmark" for a court evaluating a criminal sentence.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id.*  In this regard, the Guidelines provide

"the framework for sentencing" and "anchor… the district court's discretion." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016) (internal reference and quotation marks omitted).

If and when a district court imposes a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and …the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.* "The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.).

This Court has considered the applicable Guidelines range as well as the seven factors listed in Section 3553(a). It addresses each in turn consistent with *United States v. Crosby*, 397 F.3d 103, 112 (2d Cir. 2005).

### III. Analysis

**The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

#### 1. Family and Personal Background

Defendant was born on March 22, 1976, in Brooklyn to the marital union of Charles Moore and Annie Lois Moore. PSR ¶ 44. Unfortunately, Defendant's father died in 1995, when Defendant was only 19. *Id.* Defendant believes his father's death was caused either by a narcotics overdose or by HIV/AIDS. *Id.* Defendant's mother resides in Queens, New York, and is employed as a home health aide. *Id.* Defendant reports his mother is aware of his instant

3

conviction and remains supportive of him.  *Id.*  Defendant has two full siblings and five maternal half-siblings.  *Id.* ¶¶ 45-46.

Defendant reports he was raised in a middle-income household and notes finances were "not a problem."  *Id.* ¶ 47.  According to Defendant, his mother often moved the family throughout Brooklyn before they ultimately settled in a five-bedroom house.  *Id.*  Defendant's mother maintained a relationship with the father of Defendant's younger siblings, whom Defendant considered a second father.  *Id.*  Defendant described him as a good father, noting the two were close.  *Id.*  Defendant reported no abuse in the household.  *Id.*

In 2000 or 2001, while incarcerated at Coxsackie Correctional Facility, Defendant married Jaharis Ogando.  *Id.* ¶ 48.  Defendant has not seen Ms. Ogando since their wedding, and is unsure of her current location.  *Id.*  The couple share no children.  *Id.*

From 2009 to 2013, Defendant maintained a relationship with Deniese Wellington.  *Id.* ¶ 49.  Defendant is unsure of Ms. Wellington's current residence or employment.  *Id.*  Their relationship produced one child, a thirteen-year-old son, who suffers from sickle-cell anemia.  *Id.*  Defendant reports he has not seen his son since he was three years-old and does not know any further information about him.  *Id.*  Probation notes Defendant's criminal history contains multiple domestic violence arrests related to Ms. Wellington.  *Id.*

###     2.     Educational and Employment History

Defendant was enrolled in high school classes at the time of his first arrest in 1991, when Defendant was fifteen years old.  *Id.* ¶ 60.  Defendant reports no additional education.  *Id.*

From 2020 until his arrest for the instant offense, Defendant worked as a janitor at a building in New York, earning $120.00 daily.  *Id.* ¶ 61.  Prior to Defendant's instant arrest, except for previous terms of custody, Defendant worked various odd jobs including as a mover, in

construction, bussing tables at restaurants, and as a janitor. *Id.* ¶ 62. Defendant reports he began working at the age eleven or twelve, including in grocery stores and pizza shops, sweeping floors and clearing garbage. *Id.* ¶ 63.

### 3. Prior Convictions

Defendant's criminal history is extensive. *Id.* ¶¶ 23-32. His criminal record dates back to his teenage years and reflects nine prior convictions. *Id.* Defendant was 15 years old when he was convicted for second-degree robbery. *Id.* ¶ 23. Defendant was paroled for this offense in April 1992, but his parole was revoked just three months later after he was arrested yet again. *Id.* Defendant absconded while on parole in 1993, and was detained for seven months as a result, before he was ultimately released in November 1993. *Id.*

Shortly thereafter, Defendant was arrested for selling cocaine and later pled guilty to third-degree attempted sale of a controlled substance. *Id.* ¶ 24. While incarcerated for this offense, Defendant committed numerous disciplinary infractions, including for possessing a weapon, fighting, making threats, and committing arson. *Id.*

Defendant was next arrested in January 1995 for selling crack cocaine. *Id.* He was subsequently convicted of seventh-degree possession of a controlled substance and sentenced to six months of imprisonment on April 12, 1999. *Id.*

While that case was ongoing, between February and March 1999, Defendant participated in three bank robberies and one attempted bank robbery. *Id.* ¶ 26. Defendant ultimately pled guilty to second-degree attempted robbery in connection with these offenses. *See id.*; Def. Objection to PSR, ECF No. 43-1, at 1 (noting corrected certificate of disposition reflecting second-degree attempted robbery). While incarcerated for this offense, Defendant again committed numerous infractions, including making threats and fighting. PSR ¶ 26.

In 2011, Defendant targeted a victim with an active protective order against him. *Id.* ¶ 27. On August 24, 2011, Defendant went to the victim's home, shouted at her, and took her keys and cell phone as she was calling 911. *Id.* Defendant returned to the victim's home the next day and stole $40.00 from her purse. *Id.* Defendant was arrested on August 26, 2011, and subsequently pled guilty to petit larceny. *Id.*

Defendant again targeted a victim who had an active protective order against him in November 2013. *Id.* ¶ 29. Specifically, Defendant pounded on and kicked the victim's door, stating he "want[ed] [his] stuff," eventually breaking both the door and locks. *Id.* Defendant pled guilty to fourth-degree criminal mischief and was subsequently sentenced to thirty days of imprisonment. *Id.*

After his incarceration for this offense, Defendant returned to the victim's home and, once again, proceeded to repeatedly bang on the victim's door in January 2014. *Id.* ¶ 30. The next month, Defendant approached this victim as she was entering her home, pushed her inside, and threatened to kill her. *Id.* When the victim tried to call 911, Defendant ripped the phone cord out of the wall. *Id.* Defendant then grabbed the victim by the arm, threw her against the wall, punched her in the face, and grabbed her by the neck. *Id.* The victim's and Defendant's nine year-old son was near the fight, and Defendant punched his son in the face. *Id.* Six days later, Defendant texted the victim: "If I can't have you then no one can." *Id.* Defendant was later arrested and pled guilty to first-degree contempt. *Id.*

Finally, on May 10, 2020, Defendant pushed a police officer who was arresting another individual. *Id.* ¶ 31. Defendant hit the officer in the face, and told the officer multiple times, "I am going to murder you." Defendant was convicted of third-degree assault and was sentenced to one year of imprisonment. *Id.*

6

### 4.     Medical and Mental Health

Defendant reported no physical or mental health conditions. *Id.* ¶¶ 53, 55. However, Defendant noted he may have anger management issues, which he copes with by "keeping the positive in and the negative out." *Id.* ¶ 55.

### 5.     Substance Abuse

Defendant reported he smoked marijuana daily between ages nineteen and forty-four but reported no other illicit drug use. *Id.* ¶ 56. Probation notes Defendant tested positive for cocaine ten times while on parole. *Id.* ¶ 57.

### 6.     Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* at Section I.

### B.     The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Defendant's criminal history is serious, and there is a significant need to deter any future criminal conduct. The Government argues Defendant's sentence must reflect the seriousness of "carrying a loaded firearm in a high-crime area in the middle of the night while having a history of performing other crimes of violence and narcotics trafficking—both of which are often

associated with firearms use." Gov. Mem., ECF No. 44, at 9. The Government further argues Defendant's sentence should "be significant enough to deter a defendant who has harmed numerous victims in the past, including his own son," and should reflect Defendant's "exhibited disrespect for the law." *Id.* at 10. Probation similarly notes Defendant "has been on a wayward path nearly his entire life," stating Defendant's previous sentences have not deterred him from continuing to commit crime. Prob. Recommendation, ECF No. 39-1, at 2.

Defense counsel acknowledges Defendant's criminal history but argues Defendant's record provides limited insight into the person he is today, considering "the most serious offense on [his] record occurred 24 years ago, involved no weapons or actual violence, and only counts against him due to technical parole violations." Def. Mem., ECF No. 43, at 2. Defense counsel also reports Defendant "has learned his lesson and is eager to reconnect with [his] family, get a job, and completely distance himself from weapons and any other sort of criminal conduct." *Id.* at 3. Further, his counsel notes Defendant "is approaching 50 and knows he is getting too old for the sort of conduct that landed him before the Court." *Id.*

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to the sole count of an Indictment charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendant faces various penalties for committing this offense, including terms of imprisonment and supervised release in addition to fines and a special assessment.

Specifically, Defendant faces a maximum term of imprisonment of ten years, and no minimum term of imprisonment. 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Pursuant to 18 U.S.C. §

8

3583(b)(2), Defendant faces a term of supervised release of not more than three years. Defendant is also eligible for not less than one nor more than five years of probation, but one of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service. 18 U.S.C. §§ 3561(c)(1) and 3563(a)(2). Further, the Court may impose a fine of not more than $250,000.00 pursuant to 18 U.S.C. § 3571(b). Defendant also faces forfeiture of the firearm seized during his arrest. PSR ¶ 78. The Court is also required to impose a mandatory special assessment of $100.00 per count in accordance with 18 U.S.C. § 3013.

In addition to these penalties, Defendant also faces various collateral consequences as a result of this felony conviction. *See* PSR ¶ 79.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

The parties differ in their Guidelines calculations. As set forth in the PSR and addendum, Probation calculates the appropriate Guidelines range is between 46 and 57 months of imprisonment. PSR ¶ 69. Probation explains its calculation as follows:

> The guideline for 18 U.S.C. § 922(g)(1) offenses is USSG §2K2.1. That section provides that as [D]efendant committed the offense after sustaining one prior felony conviction of a crime of violence, specifically Attempted Robbery in the 1st Degree, the base offense level is 20. USSG §2K2.1(a)(4)(A). Defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a). Additionally, Defendant's offense level is decreased by one additional level, as the Government intends to make a motion stating that it was notified in a timely

9

manner of Defendant's intention to plead guilty. Probation therefore calculates Defendant's total offense level as 17.

Further, Probation calculates Defendant's previous criminal convictions result in a criminal history score of ten. Addendum to the PSR, ECF No. 46, at 1. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of ten establishes a criminal history category of five (V). *Id.* Therefore, based upon a total offense level of 17 and a criminal history category of five (V), Probation calculates the Guidelines imprisonment range is 46 to 57 months. *Id.* at 5.

The Government agrees with this Guidelines calculation. The Government initially objected to the PSR, disagreeing with Probation's initial calculation of Defendant's criminal history score and category. Gov. Objection to PSR, ECF No. 44-1. In so doing, the Government argued Defendant should receive one additional criminal history point for his December 2013 criminal mischief conviction, while Probation had recommended Defendant receive zero points for this conviction. Gov. Objection at 1; PSR ¶ 29. The Government argued criminal mischief "is an offense that is generally more serious than disorderly conduct," which is the relevant offense listed in Guidelines provision 4A1.2(c)(1). Gov. Objection at 1 (quoting *United States v. Gore*, 111 F.3d 124, 1997 WL 165335, at *1 (2d Cir. 1997)). However, on October 6, 2023, Probation filed an addendum to the PSR, revising its calculation of Defendant's criminal history score and category. *See* ECF No. 46. In the addendum, Probation explains "the Probation Department erred in their calculation of the points allotted to" Defendant's 2013 criminal mischief conviction, acknowledging Defendant's criminal history score should be 10 and his criminal history category should be five (V). Addendum to the PSR at 1. Accordingly, the Government and Probation's calculations now align.

10

Defense counsel, on the other hand, disagrees with the Guidelines calculation put forth by Probation and the Government.  As an initial matter, Defense counsel notes, and the Government agrees, Defendant's conviction for robbery cited in the PSR's Guidelines calculation was actually a conviction for attempted robbery in the second degree, not the first degree.  Def. Objection, ECF No. 43-1, at 1; *see also* Gov. Mem. at 5 ("[D]efendant was convicted of second-degree attempted robbery.").  The defense argues attempted robbery in the second degree is not a crime of violence as that term is defined in USSG § 2K2.1, which relies on the definition in USSG § 4B1.2.  Def. Objection at 1.  Accordingly, the defense argues Defendant's base offense level should be 14, not 20, and his total offense level should be 12.  *Id.*  The defense therefore argues Defendant's Guidelines range should be 21 to 27 months of imprisonment if the Court places him in criminal history category four (IV), and 27 to 33 months of imprisonment if the Court places him in criminal history category five (V).  Def. Mem. at 1.

In particular, the defense argues that after the Supreme Court's decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022), attempted robbery under New York law can be committed without the "use, attempted use, or threatened use of physical force."  Def. Objection at 2; USSG § 4B1.2(a)(1). While acknowledging the Second Circuit held otherwise in *United States v. Pereria-Gomez*, 903 F.3d 155 (2d Cir. 2018), the defense argues the Circuit has been "overruled, implicitly" by the Supreme Court.  *Id.* at 3.  Further, the defense argues the Guideline's commentary, which deems attempted robbery in violation of New York state law a "crime of violence," plainly conflicts with USSG § 4B1.2(a)(1) following the Supreme Court's decision in *Taylor*. *Id.*  The defense argues the Court should not give deference to the Guidelines commentary, as the Supreme Court's decision in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), limits the circumstances in which an agency's interpretation of its own regulations is entitled to deference.

11

*Id.* Because the defense argues the text of USSG § 4B1.2(a)(1) does not reach attempted robbery, "the commentary cannot be used to reach that crime." *Id.* at 5.

The Government contests defense counsel's argument for several reasons. First, the Government argues attempted second-degree robbery is itself a crime of violence. Gov. Mem. at 6. The Government argues *Taylor*, in which the Supreme Court applied a categorical approach to the elements clause of the definition for "crime of violence" under 18 U.S.C. § 924(c), does not change the sentencing analysis here. *Id.* The Government notes the Second Circuit held attempted second-degree robbery under New York law categorically constitutes a "crime of violence" in *Pereira-Gomez*, and argues a decision of a Second Circuit panel is binding "unless and until it is overruled by the Court *en banc* or by the Supreme Court." *Id.* (citing *Jones v. Coughlin*, 45 F.3d 677, 679 (2d Cir. 1995) (per curiam)). Indeed, the Government notes Judge Carol Bagley Amon rejected a similar legal challenge to the application of USSG § 4B1.2 to attempted third-degree robbery under New York law following the Supreme Court's decision in *Taylor*. *Id.* at 7. In *United States v. Maldonado*, 22-CR-28 (E.D.N.Y.), Judge Amon held *Pereira-Gomez* remains good law following *Taylor*, and attempted robbery under New York law "necessarily has as an element the attempted use or threatened use of physical force." *Id.* The Government also notes "[s]ince Judge Amon's opinion, other district courts have rejected the Taylor argument as applied to attempted robbery under New York law." *Id.* (citing *United States v. Johnson*, 22-CR-82 (E.D.N.Y. Dec. 7, 2022) (Cogan, J.); *United States v. Weston*, 21-CR-293 (E.D.N.Y. Feb. 23, 2023) (Korman, J.)).

Second, the Government argues the commentary to the Guidelines clarifies attempted second-degree robbery is an attempt to commit a crime of violence. *Id.* at 7. The Government argues application note 1 of Section 4B1.2 "clearly states that attempt crimes are crimes of violence

12

if the substantive crimes [are]." *Id.* at 7-8. Separately, the Government also argues the commentary to USSG § 2K2.1 defines "crime of violence" as *both* "the meaning given that term in § 4B1.2(a)" *and* "Application Note 1 of the Commentary to § 4B1.2." *Id.* at 9. In a reply brief, defense counsel argues reliance on the Guidelines' commentary is improper, as the Government does not establish or even argue that the text of section 4B1.2 itself is ambiguous. *See* Def. Reply, ECF No. 45.

Each party offers a different sentencing recommendation. Probation recommends a sentence of 37 months of custody and two years of supervised release. Probation Recommendation at 1. Probation notes this sentence falls at the low end of the Guidelines range it initially calculated in the PSR, explaining such a sentence is necessary given that Defendant's "personal history does not present any mitigating factors" and that Defendant's prior periods of incarceration do not appear to have deterred him from criminal behavior. *Id.* at 2-3. While Probation subsequently updated its Guidelines calculation to match the Government's calculation, Probation does not change its initial sentencing recommendation of 37 months. *See* Addendum to the PSR at 5.

The Government recommends a sentence within its calculated Guidelines range of 46 to 57 months of imprisonment. Gov. Mem. at 1. The Government argues a "meaningful and substantial penal consequence" is appropriate in this case, stating there "is nothing unusual or noteworthy in the defendant's background that would excuse or justify his crime, and there is an overriding interest in punishing firearms offenses, which are a scourge in our communities." *Id.* at 10.

Defense counsel recommends a sentence of time served. Def. Mem. at 1. Defense counsel notes Defendant has already served 29 months since his arrest for the instant offense. *Id.* Since defense counsel calculates Defendant's Guidelines range should either be 21 to 27 months (with a

13

criminal history category of four (IV)), or 27 to 33 months (with a criminal history category of five (V)), "any sentence within the Guidelines as the defense views them would likely be no more than time served." *Id.* Even if the Court rejects Defendant's objection related to his base offense level, the defense requests a sentence of time served in light of the age and nature of Defendant's criminal history, his significant rehabilitative efforts in prison, and the harsh conditions of his confinement. *Id.* In particular, defense counsel notes Defendant receives three criminal history points based on bank robberies in 1999—24 years ago—which involved no actual weapon or violence, and thus argues Defendant's criminal history score overstates the seriousness of his record. *Id.* at 2. Finally, defense counsel highlights Defendant's efforts to rehabilitate himself while at the Metropolitan Detention Center ("MDC"), including through his work as an orderly and a suicide watch companion at the facility, and defense counsel also notes conditions at the MDC have been "exceedingly difficult" due to staffing shortages and other problems related to COVID-19. *Id.*

### E.   Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Defense counsel cites the Application Notes: Background to USSG § 4A1.3, a policy statement which "recognizes that the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur." Defense counsel highlights this policy statement in arguing the Guidelines authorize a departure where a defendant's criminal history category substantially overrepresents the seriousness of the defendant's record and risk of recidivism—which, defense counsel argues, is the case here. Def. Mem. at 2.

The Court has reviewed and considered this policy factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires this Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The Court has premised its sentence around the nature and characteristics of *this* Defendant and of the instant crime of conviction. The Court has carefully considered the sentencing options written into the statute and recommended by the Guidelines. In doing so, the Court has ensured the sentence it now imposes will avoid unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires this Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

Restitution is not applicable in this case.

Therefore, as there are no additional factors under § 3553 for the Court to address at this time, the Court is now prepared to announce its sentence.

## IV. CONCLUSION

For the reasons set forth above, the Court determines a sentence of 57 months of imprisonment to be followed by 2 years of supervised release with special conditions, forfeiture, and a $100.00 mandatory special assessment is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). The Court does not impose a fine because Defendant appears unable to pay a fine.

The Court expressly adopts the factual findings of the Presentence Investigation Report and addendum, barring any errors contained therein, to the extent they are not inconsistent with this opinion.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: October 11, 2023
      Brooklyn, New York